IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| **JESUS J. GOMEZ,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | |
| § | **CIVIL ACTION V-09-34** |
| **MICHAEL J. ASTRUE,** § | |
| **Commissioner,** § | |
| **Social Security Administration,** § | |
| § | |
| **Defendant.** § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiff Jesus Gomez ("Plaintiff") and Defendant Michael J. Astrue's ("the Commissioner") cross motions for summary judgment. (Dkt. Nos. 10 & 12.) Having considered the motions, response, record, and applicable law, the Court finds that Defendant's motion should be **GRANTED** and Plaintiff's motion should be **DENIED**.

**I. Background**

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner denying Plaintiff's application for supplemental security income. Plaintiff was 44 years old at the time he applied for benefits. (Tr. 84.)[1] He graduated from high school in 1979 and completed training to become an auto mechanic in 1981. (Tr. 92.)

Plaintiff filed his application for benefits on February 24, 2005, alleging that he had been disabled since April 1, 2003, due to high blood pressure, diabetes, and knee problems. (Tr. 87.) His claims were denied by the Commissioner and again on reconsideration. (Tr. 57—62 & 64—67.) Plaintiff had a hearing before an Administrative Law Judge (ALJ) on February 20, 2007.

---

1. Citations to "Tr." refer to the administrative transcript (Dkt. No. 4).

1

(Tr. 71—74 & 489—507.) He appeared at the hearing with a non-attorney, Kimberly J. Hiene, and testified. (Tr. 43, 491—500—01.)

The ALJ issued an opinion on June 12, 2007 finding that Plaintiff was not under a disability within the meaning of the Social Security Act. (Tr. 40—54.) Now represented by attorney Maria D. Nunez, Plaintiff filed a request for review. (Tr. 38—39.) The Appeals Council denied Plaintiff's request on December 22, 2008, at which time the ALJ's determination became the final decision of the Commissioner. (Tr. 25—29.) Plaintiff filed this action on May 8, 2009 seeking review of the Commissioner's final decision. (Dkt. No. 1.)[2]

## II. Standard

The Court's review of the Commissioner's final decision to deny disability benefits is limited to two issues: (1) whether substantial record evidence supports the decision, and (2) whether proper legal standards were used to evaluate the evidence. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive and this Court must affirm. The widely accepted definition of "substantial evidence" is more than a mere scintilla, but less than a preponderance. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In applying this standard, the Court is to review the entire record, but it may not reweigh the evidence, decide the issues de novo, or substitute the Court's judgment for the Commissioner's.

---

2. On July 2, 2007, Plaintiff filed a new protective application for disability and supplemental security income. On March 3, 2009, ALJ Geradro Mariani found that Plaintiff had been under a disability since June 13, 2007—the day after the ALJ's decision was rendered in this case. (Dkt. No. 10, Ex. 1 at 5.) However, a subsequent award of benefits is irrelevant to the instant case. *See Winston ex. Rel D.F. v. Astrue*, 341 Fed. Appx. 995, 998 (5th Cir. 2009).

*Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the Court overturn it. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The Court reviews the legal standards applied by the Commissioner de novo.

To claim entitlement to disability benefits, a claimant must show that he was disabled on or before the last day of his insured status. *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979). The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that the Commissioner should evaluate disability claims according to the following sequential five-step process:

(1) A claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are.

(2) A claimant will not be found to be disabled unless he has a "severe impairment."

(3) A claimant whose impairment meets or is equivalent to an impairment listed in an Appendix to the regulation will be considered disabled without the need to consider vocational factors.

(4) A claimant who is capable of performing work he has done in the past must be found "not disabled."

(5) If the claimant is unable to perform his previous work as a result of his impairment, then factors such as age, education, past work experience, and residual functioning capacity must

be considered to determine whether he can do other work. *See* 20 C.F.R. § 404.1520(b)—(f); *see also Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving that he is unable to engage in substantial gainful activity within the meaning of the Social Security Act. *See Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The claimant must show that he suffers from a mental or physical impairment that not only renders him unable to perform his previous work, but, given his age, education, and work experience, prevents him from engaging in any other kind of substantial gainful work that exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. *Johnson v. Harris*, 612 F.2d 993, 997 (5th Cir. 1980). However, if the claimant can show that he can no longer perform his previous job, the burden then shifts to the Commissioner to show that there exists some other form of substantial gainful employment the claimant can perform. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980). By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing the burden on the fifth. *See Brown*, 192 F.3d at 498; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The analysis stops at any point in the five-step process upon a finding that the claimant is or is not disabled. *See Greenspan*, 38 F.3d at 236.

### III. Analysis

Following Plaintiff's February 20, 2007 hearing, the ALJ evaluated Plaintiff's disability claim according to the aforementioned five-step process and issued the following Findings of Fact and Conclusions of Law:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

> 2. The claimant has not engaged in substantial gainful activity since April 1, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et. seq.*, 416.920(b) and 416.971 *et. seq.*).
>
> 3. The claimant has the following severe impairments: obesity, degenerative joint disease, coronary artery disease, diabetes, and hypertension (20 CFR 404.1520(c) and 416.920(c)).
>
> . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds on occasion and 10 pounds frequently.  He can stand a maximum of 15 to 30 minutes at a time and walk 2 hours in an 8-hour workday and sit 6 hours in an 8-hour workday with normal break periods.  He cannot do continuous, repetitive fine finger movements with the right hand only and he needs a clean working environment.  He can occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl.  He has a limited ability to balance and he cannot climb ladders, ropes, or scaffolds, work at unprotected heights, or work around dangerous moving machinery.
>
> . . .
>
> 6. The claimant cannot perform his past relevant skilled heavy work as an auto/diesel mechanic or his semi-skilled light work as a gravel truck driver (20 CFR 404.1565 and 416.965).
>
> . . .
>
> 10. Considering the claimant's age, education, work experience, and residual function capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
>
> . . .
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2003 through the date of this discussion (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 45—54.)

5

Plaintiff now asks the Court to reverse the ALJ's decision on the grounds that the ALJ's Step Three finding that Plaintiff's chronic heart failure is not medically equivalent to 20 C.F.R. app. § 4.02 ("Listing 4.02") is wholly unexplained and unsupported by the evidence. Specifically, Plaintiff claims: (1) the ALJ did not identify the criteria of Listing 4.02 as having been considered at Step Three and failed to explain how he reached his conclusion; (2) the ALJ's finding that Plaintiff's chronic heart failure is not medically equivalent to Listing 4.02 is unsupported by the opinion of a physician designated by the Commissioner; and (3) Plaintiff's substantial rights were affected by those errors.

### A. The ALJ did not fully explain how he reached his conclusion that Plaintiff's heart condition did not medically equal Listing 4.02; however, the error was harmless.

At Step Two, the ALJ identified Plaintiff as suffering from the following severe impairments: obesity, degenerative joint disease, coronary artery disease, and hypertension. (Tr. 45.) The ALJ was then required at Step Three to identify the listed impairments for which Plaintiff's symptoms may or may not qualify. *See Audler*, 501 F.3d at 448. The ALJ was also required to discuss the evidence in support of Plaintiff's claim for disability and explain how he concluded that Plaintiff's impairments, although severe, were not severe enough to be eligible for disability benefits. *Id*.

Here, the ALJ identified a number of listings related to cardiac impairment for which Plaintiff's symptoms might qualify, including 4.02 (chronic heart failure), 4.03 (hypertensive cardiovascular disease), 4.04 (ischemic heart disease), 4.05 (recurrent arrhythmias), 4.06 (congenital heart disease), 4.07 (valvular heart disease), 4.08 (cardiomyopathies), 4.09 (cardiac transplantation), 4.10 (aortic aneurysm), 4.11 (chronic venous insufficiency), and 4.12 (peripheral artery disease). (Tr. 47.) Plaintiff complains that although the ALJ identified Listing

4.02 for chronic heart failure, he erred by failing to explain how he reached his conclusion that Plaintiff's symptoms did not medically equal that listing.

Chronic heart failure (CHF) is the inability of the heart to pump enough oxygenated blood to body tissues. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 4.02. To satisfy the requirements of Listing 4.02 for CHF, Plaintiff must meet the criteria of both sections A and B:

A. Medically documented presence of one of the following:

1. Systolic failure . . . with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); . . .

    AND

B. Resulting in one of the following:

1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or

2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period, with evidence of fluid retention from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization; or

3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:

    a. Dyspnea, fatigue, palpitations, or chest discomfort; or

    b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or

    c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured

> during exercise . . . due to left ventricular dysfunction, despite an increase in workload; or
>
> d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

*Id*.

Here, the ALJ concluded at Step Three that Plaintiff had coronary artery disease with an ejection fraction of 25 percent in the left ventricle (Tr. 47), but he did not acknowledge that such a low ejection fraction satisfies the criteria in Listing 4.02, Section A. Instead, the ALJ concluded that Plaintiff did not meet the listings for any cardiac impairment, explaining:

> He has a positive family history of coronary artery disease, hypertension, and diabetes. He is closely followed and his cardiac condition has remained unchanged, but there is evidence of non compliance with his hypertensive medication. The diabetes is under fairly good control. He does not meet or equal the Listings for a cardiac impairment.

(Tr. 47.)

The Court finds the ALJ failed to sufficiently explain how he reached his conclusion that Plaintiff's heart condition did not meet or medically equal Listing 4.02 for CHF. However, even in light of procedural error by the ALJ, if Plaintiff's substantive rights have not been affected, then the error is considered harmless and the ALJ's decision will be affirmed. *Audler v. Astrue*, 501 F.3d 446, 448—49 (5th Cir. 2007). To establish prejudice, the "claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'" *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). Thus, Plaintiff must establish that he is able to satisfy the criteria under Sections A and P of Listing 4.02.

Although Plaintiff offered evidence that he met the required ejection fraction of 30 percent or less under Section A, Plaintiff fails to offer any argument or evidence that he has

satisfied the required criteria for section B. There is no conclusion from a medical consultant that an exercise test would be a significant risk to Plaintiff as required by § 4.02(B)(1), and there is no evidence that Plaintiff could not perform an exercise tolerance test due to one of the four criteria in § 4.02(B)(3). Further, although the ALJ recognized that Plaintiff was treated for congestive heart failure on at least three occasions in late 2005 (Tr. 50—51), Plaintiff did not supply the Court with evidence of fluid retention from clinical and imaging assessments at the time of the episodes or evidence that he required acute extended physician intervention, as required by § 4.02(B)(2).

Because Plaintiff has failed to offer evidence indicating that he could satisfy the criteria under both sections of Listing 4.02, thus altering the result, the Court concludes that Plaintiff's substantial rights were not prejudiced. Accordingly, the Court finds that the ALJ's failure to fully explain how he reached his conclusion that Plaintiff's heart condition did not met or medically equal Listing 4.02 was harmless error.

> **B. The ALJ did not abuse his discretion in failing to further develop the record with respect to Plaintiff's CHF, which Plaintiff developed after filing for benefits.**

Plaintiff next claims the ALJ's decision that Plaintiff's CHF did not medically equal Listing 4.02 was unsupported by the opinion of a physician designated by the Commissioner, as required by SSR 96-6p, 1996 WL 374180 (July 2, 1996). The SSA forms completed by the state agency medical consultants (SAMC) were dated May 20, 2005 and August 24, 2005, and show that the SAMCs reviewed only Plaintiff's obesity, diabetes, and degenerative joint disease of the left knee. (Tr. 55 & 56.) Because Plaintiff's CHF was not discovered until a myocardial perfusion scan was performed on October 31, 2005. (Tr. 288), no SAMC reviewed Plaintiff's CHF because he did not develop the illness until after the state agency's review.

Thus, Plaintiff contends that after he requested a hearing in October 2005 and then submitted medical evidence regarding his CHF before his February 2007 hearing, the ALJ should have either: (1) called for the state agency to conduct a pre-hearing review of the new evidence, or (2) called a medical expert witness to testify at the hearing. The ALJ's failure to do so was an abuse of discretion, Plaintiff argues, especially because the ALJ had a heightened duty to develop the record since Plaintiff was not represented by counsel. *See Jones v. Barnhart*, 372 F. Supp. 2d 989, 1006 n.4 (S.D. Tex. 2005) (citing *Kane*, 731 F.2d 1216).

An ALJ may call for a benefits request to be revised and may conduct a pre-hearing review if new evidence is submitted. 20 CFR § 404.941(a) & (b)(1). An ALJ "may also ask for and consider opinions from medical experts" regarding a condition alleged to have developed after the request was filed. 20 CFR § 404.1527(f)(2)(iii). However, an ALJ is not required to consider new evidence presented after a claimant has filed for benefits, and it is within the ALJ's discretion whether to obtain an updated medical report from a medical expert on the issue of medical equivalency. *See Bailey v. Astrue*, 2009 WL 3614503 at *12 (N.D. Tex. Nov. 2, 2009); *Foley v. Barnhart*, 432 F. Supp. 2d 465, 483 (M.D. Pa. 2005). Moreover, the decision of an ALJ will not be reversed for "failure to fully and fairly develop the record unless [the claimant is] prejudiced by the ALJ's failure" to develop the record, which is shown by producing evidence that could have altered the result. *Carey*, 230 F.3d at 142 (*citing Brock*, 84 F.3d at 728; *Kane*, 731 F.2d at 1220).

The Court concludes the ALJ did not abuse his discretion when he chose not to further develop the record with respect to Plaintiff's CHF, which Plaintiff developed after he filed for disability benefits. Moreover, even if the ALJ did commit procedural error by failing to seek the expert judgment of a designated physician to establish whether Plaintiff's CHF was medically

equivalent to Listing 4.02, this error was harmless because, as explained *supra*, Plaintiff has failed to offer evidence indicating that he could satisfy the criteria under both sections of Listing 4.02, thus rendering a different result.

### C. Even if Plaintiff was disabled, his failure to follow his physician's prescribed treatment disqualified him from collecting disability benefits.

In order to collect benefits, a claimant must follow his physician's prescribed treatment, and failure to follow treatment will result in exclusion of benefits if doing so could have restored the claimant's ability to work. 20 C.F.R. § 404.1530(a) & (b). Thus, failure to comply with physician-prescribed treatment that could alleviate the claimant's alleged disabilities disentitles the claimant of his ability to collect benefits, even where the claimant is otherwise found to be disabled. *Johnson v. Sullivan*, 894 F.2d 683, 685 n.4 (5th Cir. 1990).

At the time of his hearing, Plaintiff had a body mass index of 55, which is considered morbidly obese and was likely caused by his lack of exercise, unhealthy diet, and reported consumption of one to two cases of beer per week. (Tr. 295, 301, 428, 454.) He was also a heavy smoker and suffered from hypertension. (*Id.*) It is therefore not surprising that Plaintiff developed CHF, which is common in individuals who have hypertension, smoke, consume alcohol in excess (more than two drinks per day for men), are obese, and are physically inactive.[3] On several occasions, Plaintiff's physician prescribed medication to control his hypertension and recommended that he exercise, diet, lose weight, decrease his alcohol consumption, and stop smoking in an attempt to control his hypertension and CHF. (Tr. 239, 243, 296, 302, 399, 402, 420.) Nonetheless, in nearly every documented hospital visit, Plaintiff gained weight and reported that he continued to smoke at least a half a pack a day, continued to drink, and was not

---

3. *See* AMERICAN HEART ASSOCIATION, *Lifestyle Changes for Heart Failure*, http://www.heart.org/HEARTORG/Conditions/ HeartFailure/PreventionTreatmentofHeartFailure/Lifestyle-Changes-for-Heart-Failure_UCM_306341_Article.jsp (last visited Sept. 20, 2010).

11

taking the medication he was prescribed. (Tr. 237, 242, 248, 255, 271, 278, 294—95, 298, 302, 398, 401.)

The ALJ explicitly found that "[d]espite his multiple impairments, [Plaintiff] has been non-compliant with his medical treatment." (Tr. at 52.) Specifically, the ALJ noted that "he has a history of smoking and has been advised this is a coronary risk factor" (Tr. 46); "there is evidence of noncompliance with his hypertensive medication" (Tr. 47); "[i]t is obvious that if he lost some weight, he would be able to perform at a higher level of exertion" (Tr. 48); "he had been noncompliant with his breathing mask" (Tr. 49); "it was noted [on March 27, 2006] the claimant continued to smoke a pack of cigarettes a day" (Tr. 51); and "[o]ngoing medical treatment records show he continues to remain obese" (Tr. 52).

In determining whether a claimant has an acceptable reason for failing to follow the treatment prescribed by his physician, the Court considers the claimant's "physical, mental, educational, and linguistic limitations." *See* 20 C.F.R. § 404.1530(c). A claimant may refuse to follow treatment if, for example, the treatment is contrary to the claimant's religion, is unusual or highly risky, or it involves amputation of an extremity or re-performing a recently unsuccessful surgery. 20 C.F.R. § 404.1530(c)(1)-(5). Plaintiff has no mental, physical, educational, or linguistic limitations that prevented him from conforming to the prescribed treatment, and no treatment was of a magnitude that could be viewed as congruent to the acceptable reasons to refuse treatment under § 404.1530. Thus, the Court finds that Plaintiff has failed to offer an acceptable reason for his repeated failure to comply with his prescribed medical treatment.

The Court finds that had Plaintiff taken his medication and followed his physician's orders, he could have lost weight, reduced his blood pressure, and alleviated his CHV, thus restoring his ability to work. Plaintiff's failure to comply with physician-prescribed treatment

that could have alleviated his CHV disentitles Plaintiff of his ability to collect benefits. Because Plaintiff would not be entitled to collect disability benefits even if the ALJ had determined that Plaintiff was disabled, he cannot show that his substantive rights were affected due to any procedural error on the part of the ALJ. Accordingly, the Court is of the opinion that any error was harmless, and the ALJ's decision should be affirmed.

## IV. Conclusion

For the reasons set forth above, the Commissioner's Motion for Summary Judgment (Dkt. No. 12) is **GRANTED;** Plaintiff's Motion for Summary Judgment (Dkt. No. 10) is **DENIED**; and the decision of the ALJ is **AFFIRMED.**

It is so **ORDERED**.

Signed this 23rd day of September, 2010

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE